

1  McGREGOR W. SCOTT
   United States Attorney
2  KYLE REARDON
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2700

DEC 1 7 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

5

6

7              IN THE UNITED STATES DISTRICT COURT

8             FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10 UNITED STATES OF AMERICA,      )
                                  )  CR. No. S-07-0169 GEB
11                Plaintiff,       )
                                  )  PLEA AGREEMENT
12      v.                         )
                                  )  DATE: December 7, 2007
13 LONNIE CHARLES DENISON,        )  TIME: 9:00 a.m.
                                  )  COURT: Hon. Garland E. Burrell, Jr.
14                Defendant.       )

15

16                               I.

17                          **INTRODUCTION**

18      **A.   Scope of Agreement:** The superseding information in this

19 case charges the defendant with a violation of 18 U.S.C. § 1366(b),

20 Damage to an Energy Facility.  This document contains the complete

21 Plea Agreement between the United States Attorney's Office for the

22 Eastern District of California (the "government") and the defendant

23 regarding this case.  This Plea Agreement is limited to the United

24 States Attorney's Office for the Eastern District of California and

25 cannot bind any other federal, state, or local prosecuting,

26 administrative, or regulatory authorities.

27      **B.   Court Not a Party:** The Court is not a party to this Plea

28

                                   1

1  Agreement.  Sentencing is a matter solely within the discretion of
2  the Court, the Court is under no obligation to accept any
3  recommendations made by the government, and the Court may in its
4  discretion impose any sentence it deems appropriate up to and
5  including the statutory maximum stated in this Plea Agreement.  If
6  the Court should impose any sentence up to the maximum established
7  by the statute, the defendant cannot, for that reason alone,
8  withdraw his guilty plea, and he will remain bound to fulfill all of
9  the obligations under this Plea Agreement.  The defendant
10  understands that neither the prosecutor, defense counsel, nor the
11  Court can make a binding prediction or promise regarding the
12  sentence he will receive.

## II.

## DEFENDANT'S OBLIGATIONS

**A.  Guilty Pleas:** The defendant will plead guilty to the single
count of the superseding information.  The defendant agrees that he
is in fact guilty of this charge and that the facts set forth in the
Factual Basis attached hereto as Exhibit A are accurate.

**B.  Restitution:** The Mandatory Victim Restitution Act requires
the Court to order restitution to the victims of certain offenses.
In addition to that restitution, the defendant agrees
to pay full restitution to the following victims in the amounts
below:

| Victim | Amount |
|---|---|
| California Independent System Operator Corporation | $39,459 |

Payment should be by cashier's or certified check made payable to
the Clerk of the Court.  Defendant further agrees that he will not

2

1 seek to discharge any restitution obligation or any part of such
2 obligation in any bankruptcy proceeding.

3      **C.   Term of Supervised Release:** If recommended by the United
4 States Probation Office, the defendant agrees not to oppose any term
5 of supervised release.

6      **D.   Special Assessment:** The defendant agrees to pay a special
7 assessment of $100 at the time of sentencing by delivering a check
8 or money order payable to the United States District Court to the
9 United States Probation Office immediately before the sentencing
10 hearing.  The defendant understands that this Plea Agreement is
11 voidable by the government if he fails to pay the assessment prior
12 to that hearing.  If the defendant is unable to pay the special
13 assessment at the time of sentencing, he agrees to earn the money to
14 pay the assessment, if necessary by participating in the Inmate
15 Financial Responsibility Program.

16                              **III.**

17               **THE GOVERNMENT'S OBLIGATIONS**

18      **A.   Dismiss the Indictment:** The government agrees to move, at
19 the time of sentencing, to dismiss without prejudice the Indictment
20 in this case filed on April 26, 2007.  The government also agrees
21 not to reinstate any dismissed count except as provided in this
22 agreement.

23      **B.   Incarceration Range:** The government will recommend that the
24 defendant be sentenced to no more than six months confinement.

25      **C.   Acceptance of Responsibility:** If the United States
26 Probation Office determines that a reduction in defendant's offense
27 level for his full and clear demonstration of acceptance of
28 responsibility is appropriate under U.S.S.G. § 3E1.1, the government

                                3

1  will not oppose such a reduction and will so move under §3E1.1(b),
2  so long as the defendant pleads guilty, meets with and assists the
3  probation officer in the preparation of the pre-sentence report, is
4  truthful and candid with the probation officer, and does not
5  otherwise engage in conduct that constitutes obstruction of justice
6  within the meaning of U.S.S.G § 3C1.1, either in the preparation of
7  the pre-sentence report or during the sentencing proceeding.

8                                    **IV.**

9                          **ELEMENTS OF THE OFFENSE**

10      **A.   Elements of the Offense:** At a trial, the government would
11  have to prove beyond a reasonable doubt the following elements of
12  the offense to which the defendant is pleading guilty,

13           **1.   18 U.S.C. § 1366(b) – Damage to an Energy Facility**

14           **(a)** the defendant did knowingly and willfully damage the
15  property of an energy facility;

16           **(b)** the energy facility was involved in the transmission
17  and distribution of electricity; and

18           **(c)** the damage exceeded $5,000.

19                                    **V.**

20                          **MAXIMUM SENTENCE**

21      **A.   Maximum Penalty:** The maximum sentence that the Court can
22  impose is as follows:

23           **1.   18 U.S.C. § 1366(b) – Damage to an Energy Facility**

24           **(a)** 5 years confinement,

25           **(b)** $250,000 fine, or both,

26           **(c)** three year term of supervised release, and

27           **(d)** a $100 special assessment.

28      **B.   Violations of Supervised Release:** The defendant understands

                                     4

1 that if he violates a condition of supervised release at any time
2 during the term of supervised release, the Court may revoke the term
3 of supervised release and require the defendant to serve up to 2
4 additional years imprisonment.

## VI.

### SENTENCING DETERMINATION

7    **A. Statutory Authority:** The defendant understands that the
8 Court must consult the Federal Sentencing Guidelines (as promulgated
9 by the Sentencing Commission pursuant to the Sentencing Reform Act
10 of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
11 modified by United States v. Booker and United States v. Fanfan, 543
12 U.S. 220, 125 S.Ct. 738 (2005)) and must take them into account when
13 determining a final sentence. The defendant understands that the
14 Court will determine a non-binding and advisory guideline sentencing
15 range for this case pursuant to the Sentencing Guidelines. The
16 defendant further understands that the Court will consider whether
17 there is a basis for departure from the guideline sentencing range
18 (either above or below the guideline sentencing range) because there
19 exists an aggravating or mitigating circumstance of a kind, or to a
20 degree, not adequately taken into consideration by the Sentencing
21 Commission in formulating the Guidelines. The defendant further
22 understands that the Court, after consultation and consideration of
23 the Sentencing Guidelines, must impose a sentence that is reasonable
24 in light of the factors set forth in 18 U.S.C. § 3553(a).

25    **B. Stipulations Affecting Guidelines Calculation:** The
26 government and the defendant agree that there is no material dispute
27 as to the following sentencing guidelines variables and therefore
28 stipulate to the following:

5

1           **1.   Offense Level:**

2           **(a) 18 U.S.C. § 1366(b) - Damage to an Energy Facility**

3           **(1) Base Level Offense:** The base level offense for Count

4 One is six (6).  See U.S.S.G. §2B1.1(a)(1).

5           **(2) Specific Offense Characteristics:** The direct loss

6 resulting from the defendant's actions was $20,466 for repair and

7 restoration of the CAL-ISO computer equipment and replacement of the

8 "Emergency Power Off" panel.  As a result, four (4) additional

9 levels are added.  Id. at (b)(1)(C).

10          **(3) Total Offense Level:** The total offense level for the

11 offense is 10.

12          **2.   Acceptance of Responsibility:**  See paragraph III(B)(2)

13 above.

14          **3.   Adjusted Offense Level:** The parties agree that, with

15 the exception of an adjustment for acceptance of responsibility, no

16 Chapter 3 adjustments apply.

17          **4.   Criminal History:** The defendant's criminal history

18 will be calculated by the United States Probation Office.

19          **5.   Sentencing Range:** The applicable sentencing range will

20 be determined once the Court's probation officers calculate the

21 defendant's criminal history category.

22          **6.   Departures or Other Enhancements or Reductions:** The

23 parties stipulate and agree that they will not seek or argue in

24 support of any other specific offense characteristics, Chapter Three

25 adjustments (other than the decrease for "Acceptance of

26 Responsibility"), or cross-references.  Both parties stipulate and

27 agree not to move for, or argue in support of, any departure from

28 the Sentencing Guidelines, or any deviance or variance from the

                                      6

1   Sentencing Guidelines under <u>United States v. Booker</u>, 543 U.S. 220,
2   125 S.Ct. 738 (2005).

### VII.

### WAIVERS

5   **A.  Waiver of Constitutional Rights:** The defendant understands
6   that by pleading guilty he is waiving the following constitutional
7   rights:  (a) to plead not guilty and to persist in that plea if
8   already made; (b) to be tried by a jury; (c) to be assisted at trial
9   by an attorney, who would be appointed if necessary; (d) to subpoena
10  witnesses to testify on his behalf; (e) to confront and cross-
11  examine witnesses against him; and (f) not to be compelled to
12  incriminate himself.

13  **B.  Waiver of Appeal and Collateral Attack:** The defendant
14  understands that the law gives him a right to appeal his conviction
15  and sentence.  He agrees as part of his plea, however, to give up
16  the right to appeal the conviction and the right to appeal any
17  aspect of the sentence imposed in this case so long as his sentence
18  is no longer than the top of the Sentencing Guidelines range
19  determined by the Court consistent with the stipulations set forth
20  above about the Sentencing Guidelines variables.  He specifically
21  gives up his right to appeal any order of restitution the Court may
22  impose.

23      Regardless of the sentence he receives, the defendant also
24  gives up any right he may have to bring a post-appeal attack on his
25  conviction or his sentence.  He specifically agrees not to file a
26  motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or
27  sentence.

28      If the defendant ever attempts to vacate his plea, dismiss the

7

1  underlying charges, or reduce or set aside his sentence on any of
2  the counts to which he is pleading guilty, the government shall have
3  the right (1) to prosecute the defendant on any of the counts to
4  which he pleaded guilty; (2) to reinstate any counts that may be
5  dismissed pursuant to this Plea Agreement; and (3) to file any new
6  charges that would otherwise be barred by this Plea Agreement.  The
7  decision to pursue any or all of these options is solely in the
8  discretion of the United States Attorney's Office.  By signing this
9  Plea Agreement, the defendant agrees to waive any objections,
10 motions, and defenses he might have to the government's decision.
11 In particular, he agrees not to raise any objections based on the
12 passage of time with respect to such counts including, but not
13 limited to, any statutes of limitation or any objections based on
14 the Speedy Trial Act or the Speedy Trial Clause of the Sixth
15 Amendment.

16    **C.  Waiver of Attorneys' Fees and Costs:** The defendant agrees
17 to waive all rights under the "Hyde Amendment," Section 617, P.L.
18 105-119 (Nov. 26, 1997), to recover attorneys' fees or other
19 litigation expenses in connection with the investigation and
20 prosecution of all charges in the above-captioned matter and of any
21 related allegations (including without limitation any charges to be
22 dismissed pursuant to this Plea Agreement and any charges previously
23 dismissed).

24    **D.  Waiver of DNA Testing:** Defendant has been advised that the
25 government may have in its possession pieces of physical evidence
26 that could be subjected to DNA testing.  The defendant understands
27 that the government has not tested any of these pieces of physical
28 evidence and does not intend to conduct DNA testing of any of these

8

1 items.   Defendant understands that, before entering guilty pleas
2 pursuant to this Plea Agreement, he could request DNA testing of
3 evidence in this case.   The defendant further understands that, with
4 respect to the offenses to which he is pleading guilty pursuant to
5 this Plea Agreement, he would have the right to request DNA testing
6 of evidence after conviction under the conditions specified in 18
7 U.S.C. § 3600.   Knowing and understanding his right to request DNA
8 testing, the defendant knowingly and voluntarily gives up that right
9 with respect to both the specific items listed above and any other
10 items of evidence there may be in this case that might be amenable
11 to DNA testing.   The defendant understands and acknowledges that by
12 giving up this right, he is giving up any ability to request DNA
13 testing of evidence in this case in the current proceeding, in any
14 proceeding after conviction under 18 U.S.C. § 3600, and in any other
15 proceeding of any type.   The defendant further understands and
16 acknowledges that by giving up this right, he will never have
17 another opportunity to have the evidence in this case, whether or
18 not listed above, submitted for DNA testing, or to employ the
19 results of DNA testing to support a claim that defendant is innocent
20 of the offenses to which he is pleading guilty.

21                              **VIII.**

22                    **ENTIRE PLEA AGREEMENT**

23        Other than this Plea Agreement, no agreement, understanding,
24 promise, or condition between the government and the defendant
25 exists, nor will such agreement, understanding, promise, or
26 condition exist unless it is committed to writing and signed by the
27 defendant, counsel for the defendant, and counsel for the United
28 States.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IX.**

**APPROVALS AND SIGNATURES**

 **A.   Defense Counsel**: I have read this Plea Agreement and have
discussed it fully with my client.  The Plea Agreement accurately
and completely sets forth the entirety of the agreement.  I concur
in my client's decision to plead guilty as set forth in this Plea
Agreement.

DATED:   12/14/07

_____
RACHELLE BARBOUR
Attorney for Defendant

 **B.   Defendant**: I have read this Plea Agreement and carefully
reviewed every part of it with my attorney.  I understand it, and I
voluntarily agree to it.  Further, I have consulted with my attorney
and fully understand my rights with respect to the provisions of the
Sentencing Guidelines that may apply to my case.  No other promises
or inducements have been made to me, other than those contained in
this Plea Agreement.  In addition, no one has threatened or forced
me in any way to enter into this Plea Agreement.  Finally, I am
satisfied with the representation of my attorney in this case.

DATED:   12-14-07

_____
LONNIE CHARLES DENISON
Defendant

///
///
///
///
///
///

10

1     **C.   Attorney for United States:** I accept and agree to this Plea
2 Agreement on behalf of the government.
3                                          McGREGOR W.  SCOTT
                                           United States Attorney
4
5 DATED: 12 /14/07                  By: _____
6                                        KYLE REARDON
                                         Assistant U.S. Attorney
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                   11

**EXHIBIT "A"**

**Factual Basis for Plea**

The parties agree that if this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

California Independent Systems Operator (CAL-ISO) is a not-for-profit public benefit corporation charged with operating the majority of California's high voltage wholesale power grid.  Under the law, CAL-ISO is an "energy facility" because it is "a facility that is involved in the production, storage, transmission, or distribution of electricity."

The defendant worked as a contract employee at CAL-ISO.  His duties included computer applications at the facility.  On or about April 15, 2007, the defendant's access privileges to the computer system were cut off.

On April 15, 2007, at 11:15 p.m., the defendant entered CAL-ISO.  Upon entering the building, the defendant initially tried to log onto his computer from his work station, as well as a second computer terminal in the facility.  These attempts were unsuccessful.  The defendant then went to the "Outer Data Center."  The computer systems within the "Outer Data Center" control computer applications which are used to "talk and communicate" to the electricity market.  The "electricity market" consists of power generating facilities that work together to ensure electricity needs are met for the western United States.

In the "Outer Data Center" is an "Emergency Power Off" button.  The defendant broke the glass cover and pushed the "Emergency Power Off" button in the "Outer Data Center."  There was no failure in the

12

computer system that would justify pushing the "Emergency Power Off"
button.   The damage caused by the defendant's actions exceeded
$5,000.

After pushing the button, the defendant left the facility and
returned to his home in South Natomas.  Early in the morning on
April 16, 2007, the defendant spoke with a longtime friend.  The
defendant admitted to his friend that he had "done something bad."
The defendant admitted to his friend that he had pressed the
"Emergency Shut Off."  He also told his friend that he tried to
"shut off the power grid."

As a result of his position at CAL-ISO, the defendant had
knowledge of the effect that pushing the "Emergency Power Off"
button would have.  The disruption caused by shutting off the
computers prevented CAL-ISO from communicating to the electricity
market for approximately two hours, thus leaving the electrical
power grid vulnerable to shortages.  CAL-ISO lost power for
approximately two hours after the defendant pressed the "Emergency
Shut Off;" however, no disruptions in the power grid occurred as a
result of the defendant's actions.

13