```
McGREGOR W. SCOTT
United States Attorney
KYLE REARDON
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700
```

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LONNIE CHARLES DENISON,<br><br>　　　　　Defendant. | CASE NO. CR.S-07-169 GEB<br><br>SENTENCING MEMORANDUM<br><br><br>DATE: April 11, 2008<br>TIME: 9:00 a.m.<br>COURT: Hon. Garland E. Burrell, Jr. |

The United States of America, by and through the undersigned attorney, respectfully submits this Sentencing Memorandum.  For the reasons provided below, the government recommends a sentence of six months imprisonment, a three-year term of supervised release with the special condition permitting monitoring of the defendant's computer activities, and restitution.

I.   BACKGROUND

On April 26, 2007, the Grand Jury returned a two count indictment charging the defendant with a violation of 18 U.S.C. § 1366(a), Attempted Damage to an Energy Facility, and 18 U.S.C. § 844(e), Bomb Threat.  On December 17, 2007, the defendant pleaded guilty to a superseding information charging a violation of 18 U.S.C. § 1366(b), Damage to an Energy Facility.  This plea was

entered pursuant to a plea agreement that stipulated the government would recommend a sentence of no more than six months confinement.

II.  SENTENCING CALCULATION

    A.  Statutory Maximum Sentence

The maximum sentence of imprisonment that may be imposed is 20 years.

    B.  Sentencing Guidelines Calculation

The Pre-Plea Advisory Guideline Presentence Investigation Report (hereinafter "report") in this case calculates the defendant's total offense level at 10 and his criminal history category at level I.  After the acceptance of responsibility adjustment, the overall offense level is 8 and the resulting sentencing range is 0-6 months.

    C.  The Probation Officer's Recommended Sentence

The Probation Officer recommends a sentence of five years probation, with six months of home confinement. Report at ¶ 91. The Probation Officer also recommends restitution in the amount of $34,163. Report at 22. Finally, the Probation Officer recommends numerous standard and special conditions of probation, including the following:

> The defendant shall consent to the probation officer and/or probation officer representative conducting periodic unannounced examinations of (a) any computer, or (b) computer-related device, or (c) equipment that has an internal or external modem which is in the possession or control of the defendant.  The defendant consents to retrieval and copying of all data from any such computer, computer-related device, or equipment as well as any internal or external peripherals to ensure compliance with conditions.  The defendant consents to removal of such computer, computer-related device, and equipment for purposes of conducting a more thorough inspection; [sic] and analysis.
>
> The defendant consents to having installed on any

```
        computer, computer-related device, and equipment, at the
        defendant's expense, any hardware or software to monitor
        the use of such computer, computer-related device, and
        equipment at the discretion of the probation officer, and
        agrees not to tamper with such hardware or software and
        not install or use any software programs designed to hide,
        alter, or delete his/her computer activities.  The
        defendant consents not to install new hardware without the
        prior approval of the probation officer.
```

Report at 26.

III. <u>GOVERNMENT'S RECOMMENDATION</u>

The government believes that a six-month sentence of imprisonment and a three-year term of supervised release with a special condition imposing reasonable monitoring of computers and other devices possessed and used by the defendant is permitted under the law and meets the stated goals of 18 U.S.C. §§ 3553(a) and 3583. When analyzed in light of the §3553(a) factors, the recommended sentence is sufficient, but not greater than necessary.  With a sentence of six months incarceration, the defendant is appropriately punished for his illegal conduct.  Furthermore, a six-month sentence of imprisonment and the special condition regarding computer monitoring is warranted by the nature and circumstances of the defendant's actions in this case and will have a substantial deterrent effect on this defendant's future behavior.

    A.   <u>Six Month of Imprisonment</u>

The government recommends a sentence of six months imprisonment to be followed by a three-year term of supervised release.  This sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. <u>See</u> 18 U.S.C. § 3553(a)(1)(A).  A sentence of home confinement does not adequately account for the nature and circumstances of the serious misconduct committed by the defendant, nor does it account for the

3

characteristics of this particular defendant. Id.

As noted in the thorough and comprehensive findings of the presentence report, the defendant's actions in pushing the emergency power-off switch at the California Independent Systems Operator (CAL-ISO) had the effect of cutting communications between the central player in California's electrical distribution system, CAL-ISO, and the suppliers of wholesale electricity to the state. Report at ¶¶ 9, 91, 92. As properly characterized in the report, "[f]ortunately, because of the time of the incident, no blackouts occurred." Report at ¶ 9.

A sentence of imprisonment is necessary because of the potentially disastrous consequences of the defendant's criminal actions. Had the defendant's activities occurred during a period of normal demand, as opposed to the late-night hour in which his criminal actions did occur, it is possible that electricity to hundreds, thousands, or even millions could have been lost. A loss of electricity to a piece of critical infrastructure; a hospital, fire station, water pumps that supply fresh drinking water, cell phone towers; or a black out in the home of a person in a weakened physical condition can have disastrous consequences to life and property. To the average home or business, such a loss of power can result in extreme inconvenience, discomfort, or the loss of productivity and income.[1]

---

[1] CAL-ISO operates on a wholesale power market that is linked to the entire western United States. As a result, it is not impossible that the consequences of the defendant's activities could have spread beyond the borders of California. As evidence by the electrical blackouts in the Northeastern and Midwestern United States, as well as Ontario, Canada, in 2003, a failure at a single point along an integrated power distribution network can have

4

A sentence of less than six months imprisonment or a period of home confinement would only reward the defendant for the fortunate result that did occur, rather than punish him for the potential damage that he could have caused. There is no evidence that the defendant planned his outburst to occur at a time when the consequences of his actions were likely to be minimal. Rather, the evidence in the report was that the defendant was driven by an alcohol and drug-induced anger toward CAL-ISO. Indeed, the defendant stated to a psychologist whose report was reviewed by the probation officer that he has no recollection of his criminal activity because of his heavy alcohol and drug use.

Given his impaired state, it is only a matter of coincidence and good fortune that kept the damage from the defendant's criminal behavior and the victims of his activities within the four walls of CAL-ISO, as opposed to the homes, businesses, and infrastructure of the state of California. However, such coincidental good fortune should not inure to the defendant's benefit because it was his own drug and alcohol use that led to the pressing of the emergency power-off button. A sentence of six months imprisonment properly punishes the defendant for the potentially disastrous consequences of his actions; a sentence of home confinement does not.

Furthermore, the defendant continued his irresponsible behavior when he proceeded to send an email that was perceived to be a threat

---

ramifications far beyond the source of the problem. In 2003, because of a single failure at a power generating facility in Ohio, 40 million Americans, and another 10 million Canadians, were without power for up to 48 hours. Eleven fatalities were reported to have been caused by the 2003 blackouts. See http://en.wikipedia.org/wiki/Northeast_Blackout_of_2003.

5

to blow-up the CAL-ISO headquarters.  While after-the-fact rationalization may cause the defendant or his supervisor to believe that the CAL-ISO security staff overreacted to the defendant's email warning to "get out now," such post-hoc analysis should not be used to mitigate the seriousness of the defendant's email or disparage the reasonable actions of CAL-ISO and its security staff. Regardless of how the defendant meant his email, or how he or his supervisor now views it, see Report at ¶ 26, the fact remains that it was serious enough to cause that same supervisor to report the email to CAL-ISO security personnel.  Given the defendant's activities the night before, the loss of video surveillance of the defendant following the power outage within CAL-ISO that was caused by his pushing of the emergency power-off button, and the fact that CAL-ISO is a piece of critical infrastructure, evacuating the CAL-ISO facility and performing a security sweep is an entirely reasonable response to the defendant's email threat.

In addition, the defendant's threat had a significant financial and human toll on CAL-ISO.  Some of this loss can be recovered through an order of restitution.  However, as noted in the report, additional losses occurred as a result of the defendant's actions. The immediate loss of productivity (as roughly estimated by the total loss of wages from a day of unperformed work) was significant. See Report at ¶ 19.  The residual loss due to the emotional toll that the threat had on the employees of CAL-ISO was "mammoth."  Id. at ¶ 18.

The defendant's actions necessitate a significant period of confinement.  While the presentence report describes many of the challenges faced by the defendant during his youth, including an

unstable home, alcoholic father, sexual abuse, and drug and alcohol addiction, see Report at ¶¶ 42, 50-54, such circumstances cannot excuse the defendant's actions. As an intelligent man who has demonstrated that he is capable of significant achievement, the defendant was certainly aware of the consequences of his drug and alcohol use that led up to pushing the emergency power-off button. As noted in the presentence report's description of the defendant's 2002 arrest in San Francisco, this is not the first time that the defendant's intoxication has led him to behave in an aggressive and impulsive way.  Report at ¶¶ 37-39.

   A sentence of six months imprisonment is necessary to powerfully reinforce the lesson that the defendant's demons do not permit him to take actions that endanger the lives and property of others.  It is apparent that the period of diversion imposed following the defendant's prior violent outburst in 2002 did not achieve its desired result of controlling the defendant's behavior or maintaining his sobriety.  Indeed, as was evident in this case, and as the defendant's employment history makes clear, the defendant has cycled between sobriety and addiction approximately once a year since July 2004.  See Report at ¶¶ 71-74.

    The long-term specific and general deterrent effect created by a sentence of six-months imprisonment will teach a powerful and heretofore unlearned lesson to this defendant.  Furthermore, the public will be protected from any future violent outbursts during the time of the defendant's confinement.  This deterrence and protection simply cannot be achieved with the same level of efficacy through a sentence of home confinement.  Consequently, in order to meet all of the goals of 18 U.S.C. § 3553 in the most effective way

possible, the government respectfully asks for the Court to sentence the defendant to six months imprisonment, to be followed by a three-year term of supervised release subject to the conditions stated in the presentence report.

The government acknowledges that by asking for a sentence of imprisonment, it is reducing the available period of supervision, either though probation or supervised release, from five years to three years.  See 18 U.S.C. § 3561(a)(3)("A defendant who has been found guilty of an offense may be sentenced to a term of probation unless...the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense.").  The need to adequately punish the defendant for his actions governs the government's recommendation.  While some long-term deterrence may be lost because of the reduced period of supervision, the powerful deterrent effect of imprisonment more than offsets the deterrence that will occur with additional monitoring.[2]  Furthermore, a three-year term of supervised release still provides a significant period of time for the defendant to achieve and maintain sobriety and permits a long-term course of intensive mental health counseling.  Finally, three years is ample time for the

---

[2] The government believes that the effective period of supervision will be only eighteen months less with a sentence of supervised release as opposed to probation. As recommended, the period of probation is five years, with six months home confinement. The non-confinement supervision would then be only 54 months. Under the government's recommendation, the defendant would serve six months imprisonment, and then be supervised for an additional 36 months. This three-year term is only 18 months less than the effective period of non-confinement supervision. Given that the defendant will be effectively supervised during confinement, the resulting period of supervision increases to 42 months.

defendant, a well-trained and highly skilled computer expert, to earn any amount that the court may order in restitution.

B. <u>Special Condition of Probation</u>

The government believes that a special condition permitting monitoring of the defendant's computer usage is necessary and appropriate in this case. The totality of the defendant's behavior in this case, as originally charged in the indictment and as illustrated in the probation officer's report, clearly reveals that a computer was used to send a threatening email to the defendant's employer. Restricting or monitoring the defendant's use of a computer or other devices through which he could access the internet and convey additional threats is not unreasonable, and is no greater than necessary to achieve the penalogical goals of 18 U.S.C. § 3553. <u>See</u> 18 U.S.C. § 3583. Indeed, such monitoring is clearly warranted given the nature and circumstances of this offense and deters future criminal behavior. 18 U.S.C. § 3553(a)(1) and (2)(B).

The statute governing imposition of supervised release conditions does not require that the condition be limited if it is imposed based on the nature and circumstances of the offense. 18 U.S.C. § 3583(d)(1). Regardless of this fact, and because of the fact that a computer monitoring condition is necessary to deter future criminal conduct by the defendant, <u>see</u> 18 U.S.C. § 3583(d)(2), the government believes that any concern regarding the extent of the restriction can be met by limiting the devices monitored to those capable of sending communications though the internet. To effect this additional limitation, the condition should be modified to apply to "(a) any computer, (b) any computer-related device *capable of sending communications through the*

*internet,* or (c) equipment that has an internal or external modem which is in the possession or control of the defendant." As modified, this condition is narrowly tailored to minimize the impact on the defendant and to bring it in line with the activities that the defendant engaged in at the time of his illegal conduct. See United States v. T.M., 330 F.3d 1235, 1240 (9th Cir. 2003).

The condition as modified applies to computers, computer-related devices, and items that contain a modem.  All of these items are tools that could be used to send a threat through the internet. The presentence report accurately describes that the defendant emailed a message that was reasonably interpreted to be a bomb threat.  While the report does not explicitly state that the defendant sent this email from his home computer, such an interpretation is reasonable given the fact that the defendant was at his home in a room that contained a computer at the time that the email was sent.

Monitoring the defendant's use of items with which he could repeat the behavior of sending a threatening communication is reasonable and indeed, no different than monitoring an identity thief's lines of credit or a drug dealers use of cell phones.  In every case, a defendant has used an item to commit a harmful act. In every case, because of the nature of that defendant's activities, controlling or monitoring the use of that or similar items in the future, whether the defendant has pleaded guilty to an offense involving a particular computer, line of credit, or cell phone, is

not unreasonable.[3]

The need for computer monitoring is particularly compelling in this case given the defendant's mental health and substance abuse problems. As documented in the report, the defendant has long suffered mental health issues as well as serious substance abuse problems. Furthermore, the criminal activities documented in the report are connected to those problems. Monitoring the defendant's computer activities while he treats his various problems is not inappropriate.

The defendant's reliance on United States v. Sales, 476 F.3d 732 (9th Cir. 2007), and United States v. Barsumyan, __ F.3d __ (9th Cir. 2008), is misplaced. In Sales, the defendant did not engage in any activity that used the internet. That is obviously not the case here as the defendant sent his threat by email over the internet. In Barsumyan, the defendant did not even use a computer in the course of his criminal behavior, nor did he use one in any of his prior crimes. Again, in this case, less than 12 hours after pushing the emergency power-off button and while still under the influence of the drugs and alcohol that he claims caused his behavior, the defendant sent his email threat from a computer to CAL-ISO.

The fact that the defendant has not pleaded guilty to making a bomb threat, and that the government will move to dismiss the

---

[3] The government recognizes that to be truly comprehensive in its desire to deter the communicating of threatening messages by the defendant, it should seek a condition limiting telephone and mail access, along with every other potential medium through which a threatening message could reach CAL-ISO or another victim. Such a condition would be overly broad given the nature of the defendant's actions, as well as his personal characteristics and connection to computers.

indictment alleging the emailed threat is of little import in the analysis of the appropriateness of the condition. An imposed condition may be "'reasonably necessary' to prevent future crime." Id. at 734; see also 18 U.S.C. § 3553(a)(2)(C). The facts of this case as stated in the probation report, and the return of the indictment by the Grand Jury charging that a bomb threat was made by the defendant against CAL-ISO clearly indicate, at best, that some untoward activity worthy of supervision occurred, and, at worst, that it was criminal. Monitoring the defendant's computer usage, in whatever form such usage may manifest itself, either through an actual computer, a computer-related device, or a device outfitted with a modem, is entirely necessary and reasonable as a way to prevent future crime.

The defendant's speculation that a condition permitting monitoring of his computer activity by the probation office will prevent him from gaining employment is unfounded. As a standard condition, the defendant is required to notify his employers of his conviction and the circumstances of that conviction. The defendant's criminal history of damaging his workplace when angered by the actions of his supervisors makes him a risk to employers, not the potential for monitoring of computer systems to which the defendant has access.

The condition permitting monitoring of the defendant's computer and other similar devices through which internet communications can be sent is not unreasonable. It is related to the legitimate purpose of preventing future criminal conduct by the defendant. Such a condition should be ordered by the Court.

///

12

IV. <u>CONCLUSION</u>

    For all of the above reasons, the government respectfully recommends that the Court impose a sentence of six months imprisonment, a three-year term of supervised release that includes a term permitting monitoring of the defendant's computer and other similar items, and restitution.

DATED: April 7, 2008          McGREGOR W. SCOTT
                                  United States Attorney


                          By:  <u>*/s/ Kyle Reardon*</u>
                             KYLE REARDON
                             Assistant United States Attorney